IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DIMETRIOUS WOODS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 13-869-CV-W-DGK |
| | ) | |
| JEFF NORMAN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING A WRIT OF HABEAS CORPUS AND
DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner Dimetrious Woods ("Woods"), a convicted state prisoner currently incarcerated at Jefferson City Correctional Center in Jefferson City, Missouri, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Woods challenges his conviction for second degree trafficking in drugs, which was entered in the Circuit Court of Clay County, Missouri. Woods's petition raises four grounds for relief. For the following reasons, the Court DENIES a writ of habeas corpus and DENIES a certificate of appealability.

**Standard**

A person in state custody may petition a federal district court for a writ of habeas corpus on the grounds that his continued detention violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2554(a). To be eligible for habeas relief, the petitioner must have exhausted his remedies in state court. *Id.* § 2254(b)(1)(A). Then, habeas relief is not authorized unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1), (2). The petitioner has the burden of making such a showing. *See Kenley v. Bowersox*, 275 F.3d 709, 712 (8th Cir. 2002); *Johnson v. Mabry*, 602 F.3d 167, 171 (8th Cir. 1979) (applying a "preponderance of the evidence standard" to the pre-1996 version of the habeas statute).

**Background**

As a threshold matter, the Court finds that the state court did not unreasonably determine the facts. *See id.* § 2254(d)(2). A federal court owes state court findings of fact a "high measure of deference." *Sumner v. Mata*, 455 U.S. 591, 598 (1982) (per curiam). Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). The petitioner must show clear and convincing evidence to rebut the presumption that the state court's determination of a factual issue is correct. 28 U.S.C. § 2254(e)(1). Because the state court's findings of fact have fair support in the record and because Woods has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions. The Court of Appeals recited the facts as follows:

> Officer Bret Brooks was assisting another officer with a traffic stop near a "ruse checkpoint" on the eastbound route of Interstate 70. A "ruse checkpoint" involves placing signs along an interstate highway presenting a bogus message that a drug checkpoint is ahead. The police intended for the signs to induce drug couriers to exit the interstate in an attempt to avoid the fictitious checkpoint. By design, the exit near the signs was an exit without any commercial services so that non-local traffic would have no reason to take the exit other than to avoid the checkpoint.
> A vehicle with two men exited the interstate after seeing the sign. The vehicle turned left onto the overpass. Officer Brooks had observed the vehicle and had begun to cross the overpass from the other direction at the same time. When Officer Brooks and the vehicle passed each other, Officer Brooks noticed the driver[, later identified as Raymond Brown,] make eye contact with him, look "very hard" at him, then continue to look back at him over his shoulder after having passed him. The vehicle then turned and entered

onto the interstate, heading in the direction opposite the one it had been taking prior to exiting the interstate.

Officer Brooks turned around and followed the vehicle down the interstate. The vehicle was driving erratically and well above the posted speed limit. He observed the vehicle exit the interstate after changing lanes without signaling. He decided to stop the vehicle for traffic violations. Officer Brooks activated his emergency lights and followed the vehicle as it exited the road and went into a gas station parking lot and pulled up to a gas pump.

The two occupants abruptly exited the vehicle and walked quickly toward the front doors of the gas station. Officer Brooks yelled twice for the two men to halt, at which point the passenger, Dimetrious Woods, turned, looked at the officer, stopped and walked toward him as directed. After a third yell, the driver of the vehicle also complied. Officer Brooks directed Woods back to the vehicle where he sat in the passenger seat. Officer Brooks took the driver of the vehicle a short distance away from the vehicle, advised him of the traffic violations, and asked for his driver's license. The driver was breathing very heavily and his hands were shaking uncontrollably. He had some difficulty removing his driver's license from his pants.

Officer Brooks believed that the actions of the two were indicative that some type of criminal activity was occurring. He did not issue a traffic citation but, instead, asked the driver for permission to search his person. The driver consented. Officer Brooks found two large bundles of cash consisting of hundred dollar bills (not counted) on the driver. Officer Brooks moved the driver to the patrol car and questioned him further about his criminal history while running a computer check on the driver's license. The driver admitted he had been convicted of a narcotics offense in the past and that he was on parole. The driver said that he and Woods were travelling to Columbia from Kansas City. Officer Brooks could tell the driver's heart was beating rapidly.

The records check did not disclose anything new about the driver. Officer Brooks requested permission to search the vehicle. The driver stated that the vehicle was a rental car. The driver said that Woods had rented it and that Woods would have to decide about permission. At that point, which was approximately ten minutes after the initial stop, Officer Brooks called for canine assistance.

Officer Brooks then obtained Woods' license and questioned him in a similar manner. Officer Brooks observed that Woods was anxious. After obtaining permission to search Woods' person, the officer found that Woods possessed two cell phones. It seemed unusual to the officer that Woods had rented a car in St. Louis when he lived in Columbia, and stated that he was travelling to Columbia from Kansas City. Woods revealed that he had a prior narcotics conviction for drug trafficking. Woods refused Officer Brooks' request for permission to search the vehicle.

Twenty-five minutes after the initial stop, two additional officers and a canine arrived. After the canine was allowed time to orient to the location, the dog went to

work. The dog "indicated" on the vehicle. An officer opened the trunk to reveal brown packages which revealed cocaine when opened. Woods and the driver of the vehicle were arrested. Officer Brooks discovered a large bundle of cash consisting of hundred dollar bills (not counted) on Woods' person.

Woods filed a motion to suppress all evidence obtained from the stop based on a violation of his Fourth Amendment rights. After a hearing, the motion was denied. Woods renewed his objection at trial when the evidence of the cocaine was offered by the State. The evidence was admitted over his objection. Woods further objected on the same basis to any and all statements procured during the stop and the currency seized from his person.

Woods moved for a judgment of acquittal at the close of the State's case based on insufficient evidence that he had any knowledge of or control over the cocaine located in the trunk of the rental vehicle. The motion was denied. He again moved for a judgment of acquittal at the close of all evidence, which was also denied. Woods was convicted of the class A felony of trafficking on the second degree and was sentenced as a prior drug offender to twenty-five years in the Missouri Department of Corrections.

*Woods*, 284 S.W.3d at 633–34.

The Missouri Court of Appeals affirmed the conviction on direct appeal, *State v. Woods*, 284 S.W.3d 630 (Mo. Ct. App. 2009), *cert. denied*, 558 U.S. 1121 (2010), and later affirmed the denial of Woods's motion for post-conviction relief. *Woods v. State*, 395 S.W.3d 568 (Mo. Ct. App. 2013) (per curiam); (Doc 6-13).

## Discussion

### I. Woods is not eligible for habeas relief.

Woods presents four grounds for habeas relief: (1) ineffective assistance of counsel during his trial; (2) ineffective assistance of counsel at sentencing; (3) insufficient evidence presented at trial to find him guilty of the offense beyond a reasonable doubt; and (4) admission of evidence obtained through a Fourth Amendment violation. For the reasons explained below, none of these grounds entitles Woods to a writ of habeas corpus.

### A. The state court properly found there was no ineffective assistance of counsel during his trial.

In Ground One, Woods claims that his trial counsel erred by failing to call Raymond Brown as a witness. Woods argues that the Missouri Court of Appeals's decision finding his attorney not ineffective for failing to call Brown "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," thereby entitling him to relief. 28 U.S.C. § 2254(d)(1). The Supreme Court has held that the Sixth Amendment guarantees the right to effective assistance of trial counsel. *Strickland*, 466 U.S. 688. Therefore, if the state court unreasonably applied the *Strickland* standard or did not invoke it at all, then the Court may afford habeas relief.

To establish that counsel's assistance was so ineffective that it deprived the petitioner of his Sixth Amendment rights, he must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id.* at 687.

An attorney's performance was deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. In other words, counsel must have erred so seriously "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Under this prong, the "decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005).

In deciding whether counsel's deficient performance prejudiced the defense, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" for an objective factfinder. *Id.* at 694–95. "A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . [but i]t is not enough to show that the errors had some conceivable effect on the

5

outcome of the proceeding." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 693, 694) (internal citation and quotation marks omitted).

Given these standards, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because the standards embodied in *Strickland* and § 2254(d) are "highly deferential" individually and "doubly so" when applied in tandem. *Harrington*, 131 S. Ct. at 788.

Here, the Missouri Court of Appeals, Western District, denied this ground as follows:

> At the post-conviction relief hearing, Brown testified as to what his testimony would have been at Woods's trial. Brown's evidence, in short, consisted of him taking full responsibility for the crime and exculpating Woods from any involvement in and/or knowledge of the crime. After hearing Brown's testimony, the court found that Woods's evidence "strongly suggests that calling the co-defendant as a witness would have been fruitless, if not damaging to the Movant's case" and that Woods "presented no credible evidence that his trial counsel was ineffective for deciding not to call the co-defendant as a witness." Although the court made no direct finding regarding Brown's credibility, the court would necessarily have been required to disbelieve Brown's testimony to have thereafter ruled against Woods on his motion. [*Slater v. Slater*, 147 S.W.3d 97, 100 (Mo. Ct. App. 2004).] The court went on to suggest that even if the evidence would have supported Woods's contention that counsel should have called Brown to testify, the overwhelming evidence in favor of Woods's guilt would have caused the court to disregard Brown's testimony anyway.
>
> To establish prejudice, Woods must show that, but for counsel's errors, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.* at 100. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moore v. State*, 827 S.W.2d 213, 215 [(Mo. 1992) (quoting *Strickland*, 466 U.S. at 694)]. Here, Woods has failed to prove prejudice. The record reflects that, even if counsel had called Brown as a witness, the outcome of the proceeding would not have been changed.

(Doc. 6-13, at 3–4).

The Court finds that the Missouri appellate court's decision was not contrary to, or an unreasonable application of, federal law. First, the state court did not apply law "contrary to" the

6

appropriate *Strickland* standard. *See* 28 U.S.C. § 2254(d)(1). Woods argues that because the state court found that the evidence overwhelmingly cut against him, it must have been conflating the "sufficiency of the evidence" standard with the proper *Strickland* test. However, the appellate court explicitly discussed and applied both prongs of *Strickland*. The court's reference to the "overwhelming evidence in favor of Woods's guilt" was not in service of a "sufficiency of the evidence" standard, but rather a way to illuminate why Woods's attorney likely did not call Brown to testify, given what the state court saw as the low probative value of Brown's testimony. Because Woods fails to carry his burden of showing otherwise, the Court finds that the state court did not adjudicate contrary to established federal law.

Woods argues that the state court impermissibly applied a subjective prejudice test instead of the proper objective prejudice test. The Court of Appeals stated that supplementing the record as it stood with Brown's testimony would not have changed the outcome of the case (Doc 6-13, at 4). The court did not say whether it would have changed the outcome of the case for a particular judge or jury. Given that the Court of Appeals did not explicitly use the subjective test, and implicitly used the correct standard, Woods has not shown that the court used a standard "contrary to" the proper *Strickland* test.

Second, the state court did not "unreasonabl[y] appl[y]" *Strickland*. *See* 28 U.S.C. § 2254(d)(1). Concerning deficiency of counsel's performance, the appellate court found that Woods had not introduced "any credible evidence" of incompetence, thus implicitly finding that Brown was not a credible witness. The court also found that Brown's testimony would have been a waste of time in light of the strong evidence of Woods's guilt.

7

Concerning prejudice, the Court of Appeals noted that there was no deficiency to cause prejudice in the first place, but in any event the evidence against Woods was so overwhelming that Brown's testimony would not have changed the outcome of trial.

The Court finds that the state court was reasonable in its above application of *Strickland*. Although Woods points out evidence that could have led the post-conviction court to conclude otherwise, the Court cannot say that the state court was unreasonable in reaching its decision. His claim for habeas relief is denied on Ground One.

**B. The state court properly found there was no ineffective assistance of counsel at sentencing.**

In Ground Two, Woods claims that his trial counsel erred by failing to argue to the sentencing court that Woods had served only a small amount of his four-year sentence from another case, in order to convince the court to set the sentences to run concurrently.

This ground is another claim of ineffective assistance of counsel under *Strickland*. Here, the Missouri Court of Appeals, Western District, denied it as follows:

> First, there is no support in the record for Woods's contention that the court imposed a consecutive sentence because it mistakenly believed the Woods had already substantially served his prior sentence. At sentencing the court stated: "The case [sic] sentences and commits the defendant to the custody of the Missouri Department of Corrections for a period of 25 years, consecutive with the existing sentence, which he's probably already served. I don't know that, but most likely." Clearly, the court was fully aware that Woods had a prior sentence and could have imposed concurrent sentences had it desired. That the court made clear that it did not know if Woods had already served the prior sentence suggests that this matter was insignificant to the court and the court would have imposed the same sentence regardless. Given this, there is no reasonable probability that Woods's sentence would have been different had counsel apprised the court of this information and, therefore, there is no prejudice.

(Doc. 6-13, at 4–5).

The Missouri state court again reasonably applied *Strickland*. Concerning deficiency of counsel's performance, the Court of Appeals pointed out that the sentencing court knew that

Woods had another sentence, but was not then certain whether Woods had served the other sentence. Woods did not convince the post-conviction court that an objective attorney would have made that argument, because the sentencing court then moved on and expressed no interest in clarifying that detail. Therefore, the Court finds that the state court's finding of no deficiency was not objectively unreasonable.

Concerning prejudice, the Court of Appeals noted that the sentencing court proceeded without clarifying whether Woods had in fact served much time on his unrelated sentence. This suggests that the sentencing court would have imposed the same sentence regardless.[1] Therefore, Woods did not demonstrate to the post-conviction court that even if Woods's attorney had corrected the sentencing court, that argument would have had a "reasonable probability" of changing the outcome of Woods's sentencing. *Strickland*, 466 U.S. at 694.

The Court holds that the state court did not unreasonably apply *Strickland* through the above analysis to deny Woods's claim of ineffective assistance of counsel. His claim for habeas relief is denied on Ground Two.

### C. The state court properly identified sufficient evidence adduced at trial to support Woods's conviction.

In Ground Three, Woods claims that there was insufficient evidence to support his conviction because the State's evidence was circumstantial. The issue is whether the state court's decision on this point "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States," thereby entitling him to relief. 28 U.S.C. § 2254(d)(1). The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment requires the prosecution to adduce sufficient evidence to fairly support a

---

[1] Woods counters that "it is clear from the total context of the sentencing proceeding that this remark regarding the amount of time petitioner had served on this sentence was the primary motivation behind the judge's discretionary decision to impose consecutive sentences" (Doc. 15, at 35). However, he provides no explanation or citation to support this claim, and the Court's independent review of the sentencing transcript does not compel this conclusion.

9

conclusion that every element of the crime has been established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320–24 (1979). Under *Jackson*, a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact, viewing the facts in the light most favorable to the verdict, could have agreed with the jury. *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (per curiam). Therefore, if the state court unreasonably applied *Jackson* to conclude that the evidence was sufficient for Woods's conviction, then the Court may afford habeas relief.

The Missouri Court of Appeals, Western District, denied this ground on direct appeal as follows:

> Woods also claims the trial court erred in denying his motion for judgment of acquittal. He maintains that there was insufficient evidence to find beyond a reasonable doubt that he constructively or actually possessed, or had knowledge and control over, the cocaine located in the trunk of the jointly possessed rental car.
> "When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. 1998). "Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* "In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.* Great deference is given to the trier of fact. *Id.* The "inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Id.* "Instead, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*
> Woods was convicted of trafficking drugs in the second degree. Section 195.223 states in relevant part:
>> 2. A person commits the crime of trafficking drugs in the second degree if . . . he possesses or has under his control . . . more than one hundred fifty grams of a mixture or substance containing a detectable amount of coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine salts and their optical and geometric isomers, and salts of isomers; ecgonine, its

derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the foregoing substances.

In defining "possessed" or "possessing a controlled substance," section 195.010(34) states:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint.

Woods does not contest that the trunk of the vehicle contained cocaine salts or a mixture containing a quantity of cocaine salts. Instead, he argues that the State presented insufficient evidence that he had knowledge of or control over the cocaine salts. "Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband." *State v. McCleod*, 186 S.W.3d 439, 444 (Mo. Ct. App. 2006). "The State may establish constructive possession by proving that the defendant had access to and control over the premises where the substance was found." *State v. Sanderson*, 169 S.W.3d 158, 164 (Mo. Ct. App. 2005). "If there is joint control over premises where drugs were found, further evidence is necessary to connect an accused with the drugs." *State v. Mercado*, 887 S.W.2d 688, 691 (Mo. Ct. App. 1994).

In cases involving joint control of an automobile, "a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *Sanderson*, 169 S.W.3d at 164–65. "This additional evidence must demonstrate sufficient incriminating circumstances to permit the inference of a defendant's knowledge and control over the controlled substance." *Id.* at 165. "In determining whether the State has proven sufficient additional incriminating circumstances, we must consider the totality of the circumstances." *Id.*

Additional incriminating circumstances that will support an inference of knowledge and control include the following:

Finding a large quantity of drugs in the vehicle;
Finding drugs having a large monetary value in the vehicle;
Easy accessibility or routine access to the drugs;
The odor of drugs in the vehicle;

The presence of the defendant's personal belongings in close proximity to the drugs;
Making false statements in an attempt to deceive the police;
The defendant's nervousness during the search;
The defendant's flight from law enforcement;
The presence of drugs in plain view;
Other conduct and statements made by the accused; and
The fact that the defendant rented the vehicle.

*See id.*; *State v. Franco–Amador*, 83 S.W.3d 555, 558–59 (Mo. Ct. App. 2002) (noting that nervousness or flight alone are insufficient to demonstrate guilty knowledge, but may support such a conclusion with other evidence of guilt within the totality of circumstances); *State v. Johnson*, 81 S.W.3d 212, 215–17 (Mo. Ct. App. 2002).

Given these guidelines, the State presented sufficient evidence that Woods had knowledge of or control over the drugs found in the vehicle. He rented the vehicle and used it for his personal use. The car contained Woods' mail and other papers belonging to him, and Woods testified that he rented the vehicle for personal use. Over 9,000 grams of a substance containing cocaine salts was found in the trunk of the vehicle. The trunk was not accessible from the passenger compartment. The drugs were not hidden or concealed; they were in plain view.

Woods was travelling along a known drug corridor. He and the driver exited the interstate after a threatened drug checkpoint and began going the opposite direction. Woods and the driver attempted to flee from Officer Brooks by speeding, driving erratically, and by walking away quickly and not responding when initially told to halt. Woods was the owner of the radar detector found in the vehicle and was the one who rented the car.

During Officer Brooks' investigation, Woods was nervous. His hands were shaking, his breathing was heavy. The officer testified that Woods was "nervously" eating a lollipop. Officer Brooks searched Woods and found two cell phones. He subsequently discovered a large bundle of cash on Woods' person.

A bailiff testified at trial that she escorted Woods to the restroom the previous day, and he made incriminating statements to her. She testified that Woods stated: "Don't ever do anything stupid or get into trouble, I'm facing life for some drugs. My family is here and it's very embarrassing. If my partner pleads guilty he can ruin everything for me."

Though Woods testified at trial, this court assumes the fact finder did not believe his testimony because he was convicted. It must have found his testimony to be untruthful. "[T]he factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

> The State presented sufficient additional incriminating circumstances in the totality of the circumstances demonstrating that Woods' knowledge of or control over the cocaine salts found in the vehicle.

*Woods*, 264 S.W.3d at 638–41.

The Court of Appeals thoroughly discussed the evidence and the elements of the crime. Applying a standard identical to the *Jackson* standard, the court demonstrated that there was sufficient evidence for a rational trier of fact to have reached a guilty verdict. *See Cavazos*, 132 S. Ct. at 6. Although Woods emphasizes the evidence against him was primarily circumstantial, the state court reviewing the sufficiency of the evidence must look at the evidence in the light most favorable to the prosecution. Using such a perspective, the state court believed that sufficient evidence allowed for inferences supporting each element of the crime of which Woods was convicted. Because this conclusion is well-grounded in the evidence admitted at trial, the Court holds that the Court of Appeals did not err in finding there was sufficient evidence to find him guilty beyond a reasonable doubt. Woods's claim for habeas relief is denied on Ground Three.

### D. Woods has already had an opportunity to fully and fairly litigate his Fourth Amendment claim.

In Ground Four, Woods claims that there was insufficient evidence to support his conviction because the State adduced evidence obtained in alleged violation of Woods's Fourth Amendment rights. Specifically, Woods argues that Officer Brooks lacked reasonable suspicion or probable cause to detain him for an extended period of time to allow a drug-sniffing dog to arrive. Because Officer Brooks should not have detained Woods, he argues, the trial court should have suppressed the resulting drug evidence.

The "clearly established Federal Law[] as determined by the Supreme Court of the United States" here comes from *Stone v. Powell*, 428 U.S. 465 (1976), holding that "where the

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481–82. Because Woods challenges the constitutionality of the search and seizure of evidence used against him at trial, the question is whether the state courts provided him "an opportunity for full and fair litigation" that claim. *See id.*

Here, Woods makes no showing that the state courts denied him such an opportunity. On the contrary, Woods moved to suppress the evidence before the trial, and the court held a motion hearing. *Woods*, 264 S.W.3d at 634. The court denied the motion. *Id.* Woods renewed his objection at trial, which was again denied. *Id.* He then challenged these rulings on direct appeal, unsuccessfully. *Id.* at 634–38. After the State raised these points its response brief, Woods did not even mention Ground Four in his reply. Accordingly, the Court holds that Woods had an opportunity to fully and fairly litigate his Fourth Amendment claims. Woods's claim for habeas relief is denied on Ground Four.

**II. No certificate of appealability shall issue.**

Because the Court will enter a final order adverse to Woods, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing Section 2254 Cases. A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claims "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, the Court denies a certificate of appealability. *See* 28 U.S.C. § 2254.

14

## Conclusion

Accordingly, the petition for writ of habeas corpus (Doc. 1) is DENIED and the issuance of a certificate of appealability is DENIED.

**IT IS SO ORDERED.**

Date:  August 11, 2014                              /s/ Greg Kays
                                                                GREG KAYS, CHIEF JUDGE
                                                                UNITED STATES DISTRICT COURT